TYSON, Judge.
 

 *369
 
 Christopher Lee Singletary ("Defendant") appeals from judgment entered after a jury found him guilty of sexual offense of a child by a substitute parent, indecent liberties with a child, and two counts of sexual offense with a child; adult offender. We find no prejudicial error in Defendant's trial.
 

 The trial court followed the sentencing procedures prescribed by N.C. Gen.Stat. § 14-27.4A(c), now codified at N.C. Gen.Stat. § 14-27.28(c), in sentencing Defendant. Those procedures do not require prior notice to Defendant of the State's or the trial court's intent to seek or impose aggravating factors, do not require aggravating factors to be submitted to a jury, and do not require the State to prove the aggravating factors beyond a reasonable doubt. Those procedures contravene well-settled commands of the Supreme Court of the United States, and for that reason are not constitutionally valid. Because application of N.C. Gen.Stat. § 14-27.4A(c) to Defendant's case did not result in harmless error, we vacate the trial court's judgment, and remand for a new sentencing hearing.
 

 I. Background
 

 J.K., a male child, lived with his mother, Ashley, in an apartment complex in Greensboro, North Carolina. Ashley met Defendant while she was working as a dancer at a nightclub. The two began dating, and Defendant moved in with Ashley and J.K. approximately two months later. Defendant lived with J.K. and Ashley from when J.K. was three years old until he was seven years old.
 

 Shortly after this living arrangement began, Defendant and J.K. "immediately bonded" and J.K. began affectionately referring to Defendant as "Daddy Chris." At trial, J.K. testified to multiple instances of sexual abuse
 
 *715
 
 committed by Defendant against him, beginning when J.K. was four years old.
 

 J.K. testified Defendant had, on multiple occasions, hurt his "bottom." J.K. explained Defendant had done so by putting his penis "inside [J.K.'s] ... bottom." J.K. also testified Defendant had forced him to perform fellatio on him on at least one, and possibly two, occasions. During and after these incidents, Defendant told J.K. that performing these acts would "make him [J.K.] stronger."
 

 *370
 
 J.K. described two specific instances of anal sex perpetrated by Defendant, both of which occurred on 25 August 2013. The first instance occurred at a movie theatre. J.K. testified Defendant took him into the bathroom at the theatre and performed anal sex on him inside a bathroom stall. The second instance occurred later that night. While Ashley was taking a shower, Defendant ordered J.K. onto the couch, took down J.K.'s and his own pants, and again performed anal sex.
 

 The following day, J.K. attended his first day of school in the first grade. That night, J.K. had difficulty having a bowel movement. Ashley asked J.K. whether he was constipated and if his stomach was bothering him. After initially being reluctant to provide an explanation to his mother, J.K. eventually stated "it's Chris," and revealed the sexual abuse Defendant had committed against him.
 

 After J.K. reported the sexual abuse to Ashley, she dialed 911. Paramedics arrived, and took J.K. to Moses H. Cone Memorial Hospital, where he was examined by Lindsay Strickland ("Nurse Strickland"), a sexual assault nurse examiner. At trial, Nurse Strickland was accepted, without objection, as an expert in sexual assault nurse examination. During the course of Nurse Strickland's examination of J.K., he repeated his allegations of Defendant's sexual acts and abuse.
 

 Nurse Strickland's physical examination revealed two tears in J.K.'s anus. Nurse Strickland took photographs of J.K.'s injuries and collected his underwear as evidence. Nurse Strickland testified the anal tears were caused by "some type of blunt force trauma," and that it is "not a normal finding to have those tears or injuries."
 

 The underwear collected from J.K. by Nurse Strickland was examined by Lora Ghobrial ("Ghobrial"), a serologist in the forensic biology section of the North Carolina State Crime Laboratory. After being accepted, without objection, as an expert in serology, Ghobrial testified the underwear collected from J.K. was negative for semen, but her examination revealed a single sperm. The sperm was found in the rectal area on the inside of J.K.'s underwear.
 

 J.K. was also examined by Dr. Stacey Wood Briggs ("Dr. Briggs"), a pediatric physician. Dr. Briggs testified that, given J.K.'s age and stage of development, it was "extremely, extremely unlikely to the point of absurdity that [J.K.] could produce sperm." Dr. Briggs testified that less than one percent of eleven year old boys-who would have been five years older than J.K. at the time the sperm was recovered-are able to produce sperm. Dr. Briggs opined the sperm found on the inside of J.K.'s underwear originated from a male other than J.K.
 

 *371
 

 1. Guilt-Innocence Phase
 

 Defendant's trial began on 14 April 2015. In addition to the testimony of J.K., Ashley, Nurse Strickland, Ghobrial, and Dr. Briggs, the State proffered the testimony of Jessica Spence ("Spence"), a licensed professional counselor. Spence was accepted, without objection, as an expert in the field of counseling, and testified to her interactions with and treatment of J.K.
 

 On cross-examination, the following colloquy occurred between Spence and Defendant's counsel regarding Spence's compensation:
 

 [Defendant's counsel]: Is [J.K.] a private client or has he been assigned by some sort of court service or something?
 

 [Spence]: He came to my office through his mother.... We use victim's compensation to pay for [J.K.'s] visits, if that's what you're asking.
 

 ....
 

 [Defendant's counsel]: So neither [J.K.] nor his mother are responsible for paying your fees?
 

 [Spence]: Yes, that's correct.
 

 *716
 
 [Defendant's counsel]: And what-by just-what is your fee?
 

 [Prosecutor]: Objection, relevance.
 

 THE COURT: Sustained. Counsel, approach.
 

 A bench conference was held, after which questioning continued on other topics.
 

 The record reveals $2,200 was paid to Spence from a fund administered by the North Carolina Crime Victim's Compensation Commission, a state agency.
 
 See
 
 N.C. Gen.Stat. § 15B-3. Pursuant to state law, a record of these payments was filed with the trial court and included in Defendant's file.
 
 See
 
 N.C. Gen.Stat. § 15B-15 (2015). The jury was never made aware of the amount of these payments.
 

 At the close of all evidence, a charge conference was held. At the conference, Defendant requested North Carolina Criminal Pattern Jury Instruction 104.20, testimony of an interested witness. Defendant argued that Spence "is clearly an interested witness." The court denied Defendant's request. The jury returned verdicts of guilty and convicted Defendant of all charges.
 

 *372
 

 2. Sentencing Phase
 

 Following the jury verdicts, a sentencing hearing was held. The court determined Defendant was a prior record level II for sentencing purposes. The State explained to the court that the offense of "sexual offense with a child; adult offender" codified at N.C. Gen.Stat. § 14-27.4A is a "special offense that goes off of the grid, our normal sentencing grid" and provides that a defendant convicted of the offense shall in no case receive a sentence of less than 300 months pursuant to subsection (b). The State then asserted subsection (c) "gives the court an option of going from that 25 years [300 months] all the way up to life imprisonment without parole."
 

 The court appeared perplexed by its range of sentencing options under the statute:
 

 THE COURT: Well, if the court is inclined to go above [a 300 month sentence], but is less than life or-is there any number between what-is there-I'm just looking for guidance on how the court can calculate or if it's 300 minimum or life or-
 

 The State again asserted the sentence must be a minimum of 300 months, and the court could, in its discretion, sentence Defendant to any sentence up to and including life in prison without parole, but "does have to make specific findings."
 

 Regarding sentencing, Defendant's counsel "start[ed] by talking about what [he] [thought] the constitutional law require[d] the court to do in this case." Defendant's counsel discussed several cases from the Supreme Court of the United States, and argued "for [the court] to be allowed constitutionally to go above the 25 year [300 month] minimum, the state is required to allege aggravating factors in the indictment, present those aggravating factors to the jury, and have the jury determine whether or not those aggravating factors apply to the case."
 

 After hearing from the Defendant and the State, the trial court imposed two consecutive sentences of 420 to 504 months imprisonment, one for each conviction pursuant to N.C. Gen.Stat. § 14-27.4A. The court stated it believed it "ha[d] the authority under the statute to sentence above the minimum, and finds that as a matter of fact, in support of sentencing above the minimum, that this crime was of such a brutality and severity and scope and degree that it warrants a sentence above the minimum." The court then made several oral findings of fact supporting its decision. The court also sentenced Defendant for the other crimes
 
 *373
 
 for which he was convicted, and ordered those sentences to run concurrently. Defendant gave notice of appeal in open court.
 

 After imposing sentence, the court went "back on the record" later the same day. Defendant was not present. The trial judge stated he had "neglected to include the additional 60 months." He further stated "because that's a change in the maximum number based on the numbers in the statute," the court declined to allow Defendant to be present, and instead "rel[ied] on defense counsel to explain that to [D]efendant."
 

 Ten days later, another sentencing hearing was held. Defendant was present at this hearing. Defendant's counsel reiterated his objection to a sentence above the 300 month minimum, based on several United States
 
 *717
 
 and North Carolina Supreme Court opinions. Defendant's counsel again argued the court could not sentence Defendant to more than 300 months. The State responded by arguing N.C. Gen.Stat. § 14-27.4A "gives the court the authority to find its own egregious factors." The State admitted it was aware of the case law Defendant had presented and cited, but argued "we still have a statute here that the court has correctly followed" and "[t]his law is not going to be changed unless it is appealed."
 

 After hearing from the State and Defendant, the court sentenced Defendant for a third time, finding it had "jurisdiction to resentence the defendant because the sentence imposed in the presence of the defendant on the record was inconsistent with the law." On the convictions under N.C. Gen.Stat. § 14-27.4A(c), the court sentenced Defendant to two consecutive terms of 420 months to 564 months imprisonment, "reflecting the court's original intention." Defendant again gave notice of appeal in open court.
 

 II. Issues
 

 Defendant argues the trial court erred by: (1) preventing Defendant from conducting cross-examination into the compensation paid to the State's expert witness; and (2) denying Defendant's request for a jury instruction on testimony of an interested witness. Defendant also challenges the constitutional validity of N.C. Gen.Stat. § 14-27.4A(c), and argues the statute allows the trial court to find "egregious aggravation" factors to increase punishment without submitting the issue to a jury, in violation of the Sixth Amendment to the Constitution of the United States. Even if the statute is upheld as constitutional, Defendant further argues the "egregious aggravation" factors found by the trial court in this case do not comport with the evidence at trial.
 

 *374
 

 III. Cross-Examination Regarding Expert Witness Compensation
 

 Defendant argues the trial court manifestly abused its discretion in preventing him from making any inquiry into the compensation paid to the State's expert witness.
 

 A. Standard of Review
 

 When a defendant "seeks to establish on appeal that the exercise of [the trial court's] discretion is reversible error, he must show harmful prejudice as well as clear abuse of discretion"
 
 State v. Goode,
 

 300 N.C. 726
 
 , 730,
 
 268 S.E.2d 82
 
 , 84 (1980). In order to demonstrate prejudicial error, the defendant must show " 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' "
 
 State v. Lanier,
 

 165 N.C.App. 337
 
 , 354,
 
 598 S.E.2d 596
 
 , 607 (2004) (quoting N.C. Gen.Stat. § 15A-1443(a) ).
 

 B. Analysis
 

 North Carolina "adheres to the 'wide-open' rule of cross-examination, so called because the scope of inquiry is not confined to those matters testified to on direct examination."
 
 State v. Penley,
 

 277 N.C. 704
 
 , 708,
 
 178 S.E.2d 490
 
 , 492 (1971) (citation omitted). Pursuant to the North Carolina Rules of Evidence, "[a] witness may be cross-examined on
 
 any matter relevant to any issue
 
 in the case,
 
 including credibility.
 
 " N.C. Gen.Stat. § 8C-1, Rule 611(b) (2015) (emphasis supplied).
 

 Our Supreme Court "has consistently held that an expert witness' compensation is a permissible cross-examination subject to test partiality towards the party by whom the expert was called."
 
 State v. Cummings,
 

 352 N.C. 600
 
 , 620,
 
 536 S.E.2d 36
 
 , 51 (2000) (citations and internal quotation marks omitted);
 
 State v. Brown,
 

 335 N.C. 477
 
 , 493,
 
 439 S.E.2d 589
 
 , 598-99 (1994) ;
 
 see also
 

 State v. Allen,
 

 322 N.C. 176
 
 , 195,
 
 367 S.E.2d 626
 
 , 636 (1988) ;
 
 State v. Creech,
 

 229 N.C. 662
 
 , 671,
 
 51 S.E.2d 348
 
 , 355 (1949).
 

 Given these clear and repeated pronouncements by our Supreme Court, and the record evidence indicating Spence's fee was paid with funds originating from a state agency, we hold the trial court erred in sustaining the State's objection to Defendant's questioning regarding Spence's fee. The source and amount of a fee paid to an expert witness is a permissible topic for cross-examination, as it allows the opposing party to probe the witnesses' partiality, if any, towards the party
 
 *718
 
 by whom the expert was called.
 
 E.g.,
 

 Cummings,
 

 352 N.C. at 620
 
 ,
 
 536 S.E.2d at 51
 
 .
 
 *375
 
 Any partiality established by cross-examination goes directly to the witnesses' credibility and is properly for the jury to weigh and consider.
 
 See, e.g.,
 
 id.
 

 We express no opinion on whether Spence was, in fact, a witness interested in the outcome or partial to the State. Pursuant to
 
 Creech
 
 and its progeny, however, the general topic and question asked was proper for cross-examination to allow Defendant to test Spence's partiality, if any, towards the State or against Defendant.
 
 E.g.,
 

 Cummings,
 

 352 N.C. at 620
 
 ,
 
 536 S.E.2d at
 
 51 ;
 
 Creech,
 

 229 N.C. at 671
 
 ,
 
 51 S.E.2d at 355
 
 . An expert witness receiving compensation through a state-run victim's compensation fund does not
 
 per se
 
 make a witness interested in the outcome of the case nor demonstrate partiality to the State.
 

 This holding of error does not end our analysis. We must determine if the trial court's error resulted in "harmful prejudice" to Defendant.
 
 Goode,
 

 300 N.C. at 730
 
 ,
 
 268 S.E.2d at 84
 
 . We hold it did not.
 

 Notwithstanding the trial court's error in not allowing Defendant an opportunity to inquire into any possible bias presented by Spence's fee arrangement, Defendant was able to elicit on cross-examination that the source of the Spence's fee was neither J.K. nor his mother, but rather a "victim's compensation" fund was the source "to pay for [J.K.'s] visits." The record before us also reflects that a record of the amount of these payments was filed with the trial court and included in Defendant's criminal file, pursuant to N.C. Gen.Stat. § 15B-15.
 

 In addition, and under the "harmful prejudice" analysis, the State presented other overwhelming evidence of Defendant's guilt to which Defendant did not object. The State presented the testimony of, among others: (1) J.K., presenting his allegations of Defendant's acts; (2) J.K.'s mother, Ashley, corroborating key parts of J.K.'s account; (3) Nurse Strickland, regarding her examination of J.K. and her physical findings of two tears in J.K.'s anus; (4) Ghobrial, establishing that a single sperm was found in the rectal area of the inside of J.K.'s underwear; and (5) Dr. Briggs, who testified that the possibility the sperm came from J.K. was "extremely, extremely unlikely to the point of absurdity" due to his age.
 

 In light of the unobjected testimony elicited by Defendant regarding the source of Spence's fee, the information contained in Defendant's file regarding the source of Spence's payment, and the other overwhelming evidence of Defendant's guilt, we hold Defendant has failed to carry his burden of proving "a reasonable possibility that, had the error in question not been committed, a different result would have been reached."
 

 *376
 

 Lanier,
 

 165 N.C.App. at 354
 
 ,
 
 598 S.E.2d at 607
 
 (citation omitted);
 
 see also
 

 State v. Thaggard,
 

 168 N.C.App. 263
 
 , 278-79,
 
 608 S.E.2d 774
 
 , 784-85 (2005) (finding no prejudicial error in erroneously admitted evidence when the State "presented a wealth of testimonial and physical evidence implicating defendant as the perpetrator of the crimes" for which he was convicted). Defendant's argument is overruled.
 

 IV. Jury Instruction on Interested Witness
 

 Defendant argues the trial court erred in denying his request for a jury instruction on the testimony of an interested witness. We disagree.
 

 A. Standard of Review
 

 "We review a trial court's denial of a request for jury instructions
 
 de novo.
 
 "
 
 State v. Ramseur,
 

 226 N.C.App. 363
 
 , 373,
 
 739 S.E.2d 599
 
 , 606 (2013) (citation omitted). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 Craig v. New Hanover Cnty. Bd. of Educ.,
 

 363 N.C. 334
 
 , 337,
 
 678 S.E.2d 351
 
 , 354 (2009) (citations and internal quotation marks omitted).
 

 B. Analysis
 

 "[A]n instruction to scrutinize the testimony of a witness on the ground of interest or bias is a subordinate feature of the case [.]"
 
 State v. Dale,
 

 343 N.C. 71
 
 , 77-78,
 
 468 S.E.2d 39
 
 , 43 (1996) (citation and quotation marks omitted). On appeal, "[t]he burden
 
 *719
 
 is on the party assigning error to show that the jury was misled or that the verdict was affected by an omitted instruction."
 
 State v. Peoples,
 

 167 N.C.App. 63
 
 , 69,
 
 604 S.E.2d 321
 
 , 326 (2004) (citations and quotations omitted). The charge is sufficient "if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed."
 

 Id.
 

 (citation and internal quotation marks omitted).
 

 Defendant's counsel requested the trial court give N.C.P.I.-Crim. 104.20, an instruction on interested witnesses. The pattern jury instruction states:
 

 You may find that a witness is interested in the outcome of this trial. You may take the witness's interest into account in deciding whether to believe the witness. If you believe the testimony of the witness in whole or in part, you should treat what you believe the same as any other believable evidence.
 

 N.C.P.I.-Crim. 104.20 (2015). The trial court denied Defendant's request.
 

 *377
 
 However, the trial court gave the following instruction:
 

 You are the sole judge of the believability of witnesses. You must decide for yourselves whether to believe the testimony of any witness. You may believe all, any part, or none of a witness' testimony. In deciding whether to believe a witness, you should use the same tests of truthfulness that you use in your everyday lives.
 

 Among other things, those tests may include the opportunity of the witness to see, hear, know or remember the facts or occurrences about which the witness testified, the manner and appearance of the witness,
 
 any interest, bias, prejudice or partiality the witness may have,
 
 the apparent understanding and fairness of the witness, whether the testimony is reasonable and whether the testimony is consistent with other believable evidence in the case.
 

 (emphasis supplied).
 

 The trial court's jury charge was sufficient to address Defendant's concerns, as it left no doubt that it was the jury's duty to determine whether the witness was interested or biased.
 
 See
 

 Peoples,
 

 167 N.C.App. at 69
 
 ,
 
 604 S.E.2d at 326
 
 . We hold Defendant has failed to meet his burden of showing "the jury was misled or that the verdict was affected by an omitted instruction."
 

 Id.
 

 Defendant's argument is without merit and overruled.
 

 V. N.C. Gen.Stat. § 14-27.4A
 

 Defendant argues the trial court violated his Sixth Amendment right to a trial by jury when the court sentenced him to an "egregiously aggravated" sentence without prior notice of the State's intent to seek, or the court's intent to find and impose, aggravating factors without their submission to the jury to find their existence beyond a reasonable doubt. The State concedes the error and reasons that, due to this concession, this Court need not address the constitutional validity of N.C. Gen. Stat § 14-27.4A(c).
 

 As explained below, the State's concession does not weaken, and, in fact, strengthens, Defendant's contention that the constitutional question must be considered. After three attempts, each over the objection of Defendant's counsel who cited controlling authority, the trial court, with the State's encouragement, followed the exact procedure mandated by the statute in applying its provisions and sentencing Defendant.
 

 *378
 
 N.C. Gen. Stat § 14-27.4A does not expressly require, nor contemplate, aggravating factors to be submitted to the jury or proven beyond a reasonable doubt. Rather, the statute leaves the determination of "egregious aggravation" to "the court" under some undefined burden of proof. N.C. Gen.Stat. § 14-27.4A(c). Since the trial court followed the prescribed statutory procedure, we must examine whether the statute comports with federal constitutional requirements.
 

 A. Standard of Review
 

 It is "well settled in this State that the Courts have the power, and it is their duty in proper cases, to declare an act ... unconstitutional-but it must be plainly and clearly the case."
 
 McIntyre v. Clarkson,
 

 254 N.C. 510
 
 , 515,
 
 119 S.E.2d 888
 
 , 892 (1961). This Court has the power to review the facial validity of criminal statutes.
 
 See
 
 N.C. Gen.Stat. §§ 1-267.1(a1), (d) (2015) (noting that while a "facial challenge to the validity of an
 
 *720
 
 act of the General Assembly shall be transferred" and heard by a three judge panel in Wake County Superior Court, the procedure "applies only to civil proceedings[, and n]othing in this section shall be deemed to apply to criminal proceedings"). "When assessing a challenge to the constitutionality of legislation, this Court's duty is to determine whether the General Assembly has complied with the constitution."
 
 Hart v. State,
 

 368 N.C. 122
 
 , 126,
 
 774 S.E.2d 281
 
 , 283 (2015).
 

 "When examining the constitutional propriety of legislation, we presume that the statutes are constitutional, and resolve all doubts in favor of their constitutionality."
 
 State v. Mello,
 

 200 N.C.App. 561
 
 , 564,
 
 684 S.E.2d 477
 
 , 479 (2009) (citation and internal quotation marks omitted),
 
 aff'd per curiam,
 

 364 N.C. 421
 
 ,
 
 700 S.E.2d 224
 
 (2010). If a statute contains both constitutional and unconstitutional provisions, we sever the unconstitutional provisions and uphold the constitutional provisions to the extent possible.
 
 Fulton Corp. v. Faulkner,
 

 345 N.C. 419
 
 , 422,
 
 481 S.E.2d 8
 
 , 10 (1997) (citations omitted).
 

 This Court reviews the asserted unconstitutionality of a statute
 
 de novo.
 

 State v. Whitaker,
 

 201 N.C.App. 190
 
 , 192,
 
 689 S.E.2d 395
 
 , 396 (2009),
 
 aff'd,
 

 364 N.C. 404
 
 ,
 
 700 S.E.2d 215
 
 (2010).
 

 B. Analysis
 

 1. Sentencing Pursuant to the Structured Sentencing Act
 

 Criminal sentencing in North Carolina is conducted pursuant to Article 81B of Chapter 15A of the North Carolina General Statutes, known as the "Structured Sentencing Act." The Structured Sentencing Act consists of
 

 *379
 
 a grid ... with a vertical axis reflecting the seriousness of the crime and the horizontal axis reflecting the extent of the offender's prior criminal record. Each cell in the grid, corresponding to a particular "class" of felony or misdemeanor and a particular prior record "level," contains information about the available sentence dispositions.... The cell also contains information about the durations of the prison terms the judge could select, including a presumptive range, a higher aggravated range, and a lower mitigated range.
 

 Ronald F. Wright & Rodney L. Engen,
 
 The Effects of Depth and Distance in a Criminal Code on Charging, Sentencing, and Prosecutor Power,
 

 84 N.C. L. Rev. 1935
 
 , 1951 (2006) (footnotes omitted).
 

 Violation of N.C. Gen.Stat. § 14-27.4A is a Class B1 felony. N.C. Gen.Stat. § 14-27.4A (2014). Pursuant to the sentencing grid contained in the Structured Sentencing Act, the possible active minimum sentence ranges for a prior record level II offender, such as Defendant, convicted of a Class B1 felony are as follows: 166-221 months in the mitigated range; 221-276 months in the presumptive range; and 276345 months in the aggravated range.
 
 See
 
 N.C. Gen.Stat. § 15A-1340.17(c) (2015). Under the Structured Sentencing Act, the highest presumptive minimum sentence set forth for a prior record level II offender convicted of a Class B1 felony is 276 months imprisonment.
 
 See
 
 id.
 

 This high-end presumptive minimum sentence corresponds to a maximum presumptive sentence of 392 months imprisonment.
 
 See
 
 N.C. Gen.Stat. § 15A-1340.17(f) (providing that the maximum sentence "for a Class B1 ... felony that is subject to the registration requirements of G.S. Chapter 14, Article 27A," such as N.C. Gen.Stat. § 14-27.4A,
 
 see
 
 N.C. Gen.Stat. § 14-208.6(5) (2013), "shall be equal to the sum of the minimum term of imprisonment and twenty percent (20%) of the minimum term of imprisonment, rounded to the next highest month, plus 60 additional months");
 
 see also
 

 State v. Ruffin,
 

 232 N.C.App. 652
 
 , 655-56,
 
 754 S.E.2d 685
 
 , 687-88 (2014).
 

 Under the Structured Sentencing Act, a sentencing judge may only depart from the presumptive range and sentence a defendant within the aggravated range, if the State has proven to a jury, beyond a reasonable doubt, that factors in aggravation exist. N.C. Gen.Stat. § 15A-1340.16(a) - (a1) ;
 
 accord
 

 State v. Norris,
 

 360 N.C. 507
 
 , 512,
 
 630 S.E.2d 915
 
 , 919 (2006). The State must also provide a defendant with at least 30 days prior written notice of its intent to seek and prove one or more aggravating factors, and must "list all of the aggravating factors the State seeks to
 
 *721
 
 establish." N.C. Gen.Stat. § 15A-1340.16(a6).
 
 *380
 
 N.C. Gen.Stat. § 14-27.4A, now codified in identical form at N.C. Gen.Stat. § 14-27.28, departs from this normal sentencing procedure in two ways, the latter of which Defendant challenges in this case. This opinion will cite to the former codification of the statute, in force at the time Defendant was sentenced.
 

 2. Sentencing Pursuant to N.C. Gen. Stat § 14-27.4A
 

 N.C. Gen.Stat. § 14-27.4A first departs from the Structured Sentencing Act by providing that a defendant convicted of "sexual offense with a child; adult offender" "shall be sentenced pursuant to [the Structured Sentencing Act],
 
 except
 
 that in no case shall the person receive an active punishment of less than 300 months[.]" N.C. Gen.Stat. § 14-27.4A(b) (emphasis supplied). Under this provision, the structured sentencing scheme involving mitigated, presumptive, and aggravated minimum sentencing ranges, along with the corresponding maximum sentences, remain in place,
 
 except
 
 to require a minimum sentence of 300 months. N.C. Gen.Stat. §§ 14-27.4A(b) ; 15A-1340.17(c), (e), (f).
 

 As previously noted, without aggravating factors admitted or proven to a jury, a prior record level II offender convicted of a Class B1 offense is generally sentenced within the presumptive range to a minimum sentence between 221 and 276 months imprisonment.
 
 See
 
 N.C. Gen.Stat. § 15A-1340.17(c). The possible minimum sentences prescribed in the presumptive range, as well as the mitigated range and the lower end of the aggravated range, for a Class B1 felony are less than the minimum 300 month sentence commanded by N.C. Gen.Stat. § 14-27.4A(b). N.C. Gen.Stat. § 14-27.4(b) (providing a defendant convicted under the statute is sentenced consistent with the Structured Sentencing Act, but "in no case shall ... receive" a sentence of less than 300 months).
 

 Due to subsection (b)'s deviation from the Structured Sentencing Act, a prior record level II offender convicted under this statute and sentenced in the presumptive range would be sentenced to a minimum of 300 months imprisonment.
 

 Id.
 

 Defendant has not challenged subsection (b)'s departure from the normal minimum sentence set forth in the Structured Sentencing Act, and we must presume it to be constitutional in the case before us.
 
 See, e.g.,
 

 Lowery v. Bd. Of Graded Sch. Trs.,
 

 140 N.C. 33
 
 , 40,
 
 52 S.E. 267
 
 , 269 (1905) ("In determining the constitutionality of an act of the Legislature courts always presume, in the first place, that the act is constitutional.").
 

 N.C. Gen.Stat. § 14-27.4A further departs from the Structured Sentencing Act, under subsection (c), in a second and more substantial
 
 *381
 
 manner. Defendant challenges the constitutionality of N.C. Gen.Stat. § 14-27.4A(c), which provides:
 

 Notwithstanding the provisions of Article 81B of Chapter 15A of the General Statutes, [the Structured Sentencing Act,] the court may sentence the defendant to active punishment for a term of months greater than that authorized pursuant to G.S. 15A-1340.17, up to and including life imprisonment without parole, if the court finds that the nature of the offense and the harm inflicted are of such brutality, duration, severity, degree, or scope beyond that normally committed in such crimes, or considered in basic aggravation of these crimes, so as to require a sentence to active punishment in excess of that authorized pursuant to G.S. 15A-1340.17. If the court sentences the defendant pursuant to this subsection, it shall make findings of fact supporting its decision, to include matters it considered as egregious aggravation. Egregious aggravation can include further consideration of existing aggravating factors where the conduct of the defendant falls outside the heartland of cases even the aggravating factors were designed to cover. Egregious aggravation may also be considered based on the extraordinarily young age of the victim, or the depraved torture or mutilation of the victim, or extraordinary physical pain inflicted on the victim.
 

 N.C. Gen.Stat. § 14-27.4A(c) (2013).
 

 The State argues it conceded Defendant must be re-sentenced and, because of its
 
 *722
 
 concession, we need not address the constitutional validity of N.C. Gen.Stat. § 14-27.4A(c). This meretricious argument fails because, despite constitutional challenges by Defendant with citation to controlling legal authority and acknowledgement of such authority by the State, the trial court followed all procedures required by N.C. Gen.Stat. § 14-27.4A(c) in sentencing Defendant. The trial court determined, and stated in open court, that the crime "was of such a brutality and severity and scope and degree that it warrants a sentence above the minimum." The trial court then entered eight findings of fact "[i]n support of sentencing pursuant to § 14-27.4A(c)," and entered a judgment sentencing Defendant to more than 300 months, as required by N.C. Gen.Stat. § 14-27.4A(b), but less than the death penalty, as permitted by N.C. Gen.Stat. § 14-27.4A(c).
 
 *382
 
 In a reversal from its position in the trial court, the State now concedes the trial court erred by failing to give prior notice of its intent to find "egregious aggravation" factors, failing to submit aggravating factors to the jury, and failing to have the factors proven beyond a reasonable doubt. The State's concession, however, does not change the fact that the statute does not require a defendant to be provided advance notice of "egregious aggravation" factors, does not require aggravating factors to be submitted to the jury, and does not require the factors to be proven to a jury beyond a reasonable doubt before subsection (c) may be utilized to impose an " egregiously aggravated" sentence.
 

 Id.
 

 If this Court were to accept the State's logic, each time N.C. Gen.Stat. § 14-27.4A(c) is invoked and administered in the
 
 exact
 
 manner permitted by the statute to lengthen the term of a defendant's sentence, this Court would be required to remand the case for a new sentencing hearing without inquiry into the statute's constitutional validity. If the trial court, on remand, again utilized the power conferred upon it by subsection (c) to lengthen the defendant's sentence, and again did so in the
 
 exact
 
 manner permitted by the statute, the State would have this Court again remand without inquiry into the statute's constitutional validity. This process would continue, presumably, until the trial court employed some set of procedures not required nor contemplated under the challenged statute in order to satisfy constitutional requirements.
 

 By its own terms, and as conceded by the State, N.C. Gen.Stat. § 14-27.4A(c) does not require prior notice to Defendant, submission of "egregious aggravation" factors to the jury, or proof beyond a reasonable doubt by the State. The trial court did not err by failing to submit aggravating factors to the jury, because N.C. Gen.Stat. § 14-27.4A(c) does not require, or permit, such a submission. The trial court, after three attempts, followed all procedures mandated by the statute to sentence Defendant in the manner it did. The State's explicit concession of error as an attempt to avoid addressing the constitutional validity of N.C. Gen.Stat. § 14-27.4A(c) does not resolve the inherent and unavoidable defects contained in the statute and applied to Defendant in this case.
 

 3. Constitutional Validity of N.C. Gen.Stat. § 14-27.4A(c)
 

 Statutes which permit a defendant's sentence to be lengthened based on the existence of aggravating factors have a long history of review at the Supreme Court of the United States, beginning with
 
 Apprendi v. New Jersey,
 

 530 U.S. 466
 
 ,
 
 120 S.Ct. 2348
 
 ,
 
 147 L.Ed.2d 435
 
 (2000).
 

 In
 
 Apprendi,
 
 the Supreme Court considered a New Jersey statute, which allowed for an "extended term" of imprisonment for a defendant
 
 *383
 
 convicted of a firearm possession law, if the trial judge, by a preponderance of the evidence, found the defendant committed the crime for the purpose of intimidating an "individual or group of individuals because of" their membership in an enumerated protected class.
 
 530 U.S. at 468-69
 
 ,
 
 120 S.Ct. at 2351
 
 ,
 
 147 L.Ed.2d at 442
 
 . The Court struck down the statute, and held:
 

 Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse [this] statement of the rule[:] ... "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed
 
 *723
 
 range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."
 

 Id.
 

 at 490
 
 ,
 
 120 S.Ct. at 2362-63
 
 ,
 
 147 L.Ed.2d at 455
 
 (citation omitted). The Court held the New Jersey statute was unconstitutional because it allowed a judge, rather than a jury, to find the factors which lead to an "extended term" of imprisonment, and the judge was permitted to find and impose those factors by only a preponderance of the evidence.
 

 Id.
 

 at 491-92
 
 ,
 
 120 S.Ct. at 2363-64
 
 ,
 
 147 L.Ed.2d at 456
 
 .
 

 Four years later, the Supreme Court expanded upon its holding in
 
 Apprendi
 
 in
 
 Blakely v. Washington,
 

 542 U.S. 296
 
 ,
 
 124 S.Ct. 2531
 
 ,
 
 159 L.Ed.2d 403
 
 (2004). In
 
 Blakely,
 
 the Court considered a Washington kidnapping statute, which allowed the trial court to impose a 120-month sentence, despite a usual 53-month maximum.
 
 542 U.S. at 298
 
 ,
 
 124 S.Ct. at 2534
 
 ,
 
 159 L.Ed.2d at 410
 
 . The statute permitted the lengthened prison term based upon a judicial determination that the defendant had acted with "deliberate cruelty."
 

 Id.
 

 Under Washington's statute, a judge imposing an "exceptional sentence" was required to make findings of fact and conclusions of law to support the sentence.
 

 Id.
 

 at 299
 
 ,
 
 124 S.Ct. at 2535
 
 ,
 
 159 L.Ed.2d at 411
 
 .
 

 The Court noted that "the 'statutory maximum' for
 
 Apprendi
 
 purposes is the maximum sentence a judge may impose
 
 solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.
 
 "
 

 Id.
 

 at 303
 
 ,
 
 124 S.Ct. at 2537
 
 ,
 
 159 L.Ed.2d at 413
 
 (emphasis original) (citation omitted). "In other words," the Court continued, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose
 
 without
 
 any additional findings."
 

 Id.
 

 at 303-04
 
 ,
 
 124 S.Ct. at 2537
 
 ,
 
 159 L.Ed.2d at 413-14
 
 (emphasis in original).
 

 *384
 
 The Court explained that if the sentencing judge imposed the " exceptional sentence" without finding additional facts, "he would have been reversed."
 

 Id.
 

 at 304
 
 ,
 
 124 S.Ct. at 2538
 
 ,
 
 159 L.Ed.2d at 414
 
 . "Our commitment to
 
 Apprendi
 
 in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial."
 

 Id.
 

 at 305-06
 
 ,
 
 124 S.Ct. at 2538
 
 ,
 
 159 L.Ed.2d at 415
 
 .
 
 Apprendi
 
 "carries out this design by ensuring that the judge's authority to sentence
 
 derives wholly from the jury's verdict.
 
 Without that restriction, the jury would not exercise the control that the Framers intended."
 

 Id.
 

 at 306
 
 ,
 
 124 S.Ct. at 2539
 
 ,
 
 159 L.Ed.2d at 415
 
 (emphasis supplied). The Court held the Washington statute violated the Sixth Amendment, as applicable to the states through the Fourteenth Amendment of the Constitution of the United States.
 
 Id.; see also
 

 Parker v. Gladden,
 

 385 U.S. 363
 
 , 364,
 
 87 S.Ct. 468
 
 , 470,
 
 17 L.Ed.2d 420
 
 , 422 (1966). Against this backdrop of controlling constitutional requirements, we consider N.C. Gen.Stat. § 14-27.4A(c).
 

 In this case: (1) Defendant was not given any advance notice of the State's intention to seek any aggravating factors; (2) Defendant did not admit to any aggravating factors; (3) no aggravating factors were presented to the jury under any standard of proof; and (4) no aggravation or "egregious aggravation" factors were proven beyond a reasonable doubt. Under
 
 Apprendi
 
 and
 
 Blakely,
 
 the minimum sentence permitted for this offense is the 300-month minimum mandated by N.C. Gen.Stat. § 14-27.4A(b), and the maximum sentence permitted by law without finding additional facts was the 392-month statutory maximum sentence permitted by N.C. Gen.Stat. § 15A-1340.17(f). N.C. Gen.Stat. § 15A-1340.17(f) ;
 
 see also
 

 Blakely,
 

 542 U.S. at 303
 
 ,
 
 124 S.Ct. at 2537
 
 ,
 
 159 L.Ed.2d at 413
 
 . The constitutional validity of subsection (b) has not been challenged in this case.
 

 N.C. Gen.Stat. § 14-27.4A(c) purports to provide the trial court with the unfettered ability to lengthen a defendant's sentence up to and including life imprisonment without the possibility of parole, with no advance notice to the defendant and with no input from a jury. To wield this unbridled power, the statute only requires the trial court to: (1) find "that the nature of the offense and the harm inflicted are of such brutality, duration, severity, degree, or scope" beyond normally committed in such crimes; and (2)
 

 *724
 
 make findings of fact supporting its decision, "to include matters it considered as egregious aggravation." N.C. Gen.Stat. § 14-27.4A(c).
 

 The judge's purported authority to sentence a defendant to a sentence above the statutory maximum does not "derive[ ] wholly from the jury's verdict."
 
 Blakely,
 

 542 U.S. at 305-06
 
 ,
 
 124 S.Ct. at 2538
 
 ,
 
 159 L.Ed.2d at 415
 
 . Instead,
 
 *385
 
 the judge's authority over a defendant's sentence derives from his or her perceptions of the circumstances and severity of the crime, and a subjective judicial consideration of factors he or she considers to be "egregious aggravation."
 

 Following the enactment of N.C. Gen.Stat. § 14-27.4A by our General Assembly in 2008, legal commentators opined that subsection (c) was likely unconstitutional.
 
 See
 
 JESSICA SMITH, NORTH CAROLINA CRIMES: A GUIDEBOOK ON THE ELEMENTS OF CRIME 236-37 (7th ed. 2012) ("[T]his procedure [permitted by N.C. Gen.Stat. § 14-27.4A(c) ] appears to run afoul of the United States Supreme Court decision in
 
 Blakely v. Washington
 
 [.]"); John Rubin, 2008 Legislation Affecting Criminal Law and Procedure," UNC SCHOOL OF GOV'T ADMINISTRATION OF JUSTICE BULLETIN NO. 2008/006, 3-4 (2008),
 
 available at
 
 http://www.sogpubs.unc.edu/electronicversions/pdfs/aojb0806.pdf (noting the procedure proscribed by N.C. Gen.Stat. § 14-27.4A(c) "is likely unconstitutional" and the definition of egregious aggravation was "designed for application by judges exercising discretion, not for juries normally charged with finding concrete facts.").
 

 "Because circumstances in aggravation are found by the judge, not the jury," and because the statute does not require any aggravation or "egregious aggravation" factors be found beyond a reasonable doubt, N.C. Gen.Stat. § 14-27.4A(c) "violates
 
 Apprendi
 
 's bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "
 
 Cunningham v. California,
 

 549 U.S. 270
 
 , 288-89,
 
 127 S.Ct. 856
 
 , 868,
 
 166 L.Ed.2d 856
 
 , 873 (2007) (quoting
 
 Apprendi,
 

 530 U.S. at 490
 
 ,
 
 120 S.Ct. 2348
 
 ,
 
 147 L.Ed.2d 435
 
 ).
 

 4. Use of Special Verdicts
 

 Devoting but a single sentence of its brief to the defense of N.C. Gen.Stat. § 14-27.4A(c)'s constitutionality, the State argues the trial court may properly submit "egregious aggravation" factors to a jury through the use of a special verdict. Based upon the clear statutory text and the inherently judicial nature of the inquiry required by the statute, we reject the State's contention.
 

 N.C. Gen.Stat. § 14-27.4A(c) explicitly gives only "the court," and not the jury, the ability to determine whether the nature of the offense and the harm inflicted require a sentence in excess of what is otherwise permitted by law. N.C. Gen.Stat. § 14-27.4A(c) ("
 
 [T]he court
 
 may sentence the defendant ...
 
 if the court
 
 finds that the nature of the offense and the harm inflicted are of such brutality, duration, severity, degree, or scope beyond that normally committed in such crimes, or considered in
 
 *386
 
 basic aggravation of these crimes, so as to require a sentence to active punishment in excess of that authorized pursuant to G.S. 15A-1340.17.
 
 If the court
 
 sentences the defendant pursuant to this subsection,
 
 it
 
 shall make findings of fact supporting
 
 its
 
 decision, to include matters
 
 it
 
 considered as egregious aggravation." (emphasis supplied)).
 

 The primary purpose of statutory construction is to "give effect to the intent of the legislature."
 
 State v. Oliver,
 

 343 N.C. 202
 
 , 212,
 
 470 S.E.2d 16
 
 , 22 (1996) (citation omitted). "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning."
 
 Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.,
 

 322 N.C. 271
 
 , 276,
 
 367 S.E.2d 655
 
 , 658 (1988) (citations omitted);
 
 see also
 

 State v. Wiggins,
 

 272 N.C. 147
 
 , 153,
 
 158 S.E.2d 37
 
 , 42 (1967) ("It is elementary that in the construction of a statute words are to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise." (citation omitted)). Courts are "without power to interpolate, or superimpose, provisions and limitations not contained therein."
 

 *725
 

 State v. Camp,
 

 286 N.C. 148
 
 , 152,
 
 209 S.E.2d 754
 
 , 756 (1974) (quoting 7 Strong, N.C. Index 2d, Statutes § 5 (1968)).
 

 In order for this Court to read the statute to permit a jury to determine that "the nature of the offense and the harm inflicted" requires a lengthened sentence, or to determine "egregious aggravation" under the statute, we must on multiple occasions interpret the term "the court" in the statutory text as "the jury." Such an extratextual interpretation would then require the jury: (1) to determine which circumstances are found in the "heartland of cases" of the crime of sexual offense with a child; adult offender; and (2) to determine whether the circumstances in the present case fall within, or outside, of that "heartland." N.C. Gen.Stat. § 14-27.4A(c).
 

 Not only would the State's proposed textual substitution require the jury to undertake an inherently judicial function-such as compiling a list of prior cases, considering the facts and circumstances of those cases, and determining whether the facts and circumstances of the present case are more "egregious" than what is present in the "heartland" of child sexual abuse cases-it is also contrary to the clear statutory mandate that all such actions be conducted by "the court." N.C. Gen.Stat. § 14-27.4A(c).
 

 Applying the "clear and unambiguous" text of N.C. Gen.Stat. § 14-27.4A(c), the General Assembly intended the findings of fact and "egregious aggravation" factors to be found by "the court," and not to be
 
 *387
 
 submitted to the jury through the use of a special verdict. We decline, as we must, to "interpolate, or superimpose" provisions onto the statute in order to save its constitutionality.
 
 Camp,
 

 286 N.C. at 152
 
 ,
 
 209 S.E.2d at 756
 
 (citation omitted). The State's contention is overruled.
 

 Courts reviewing the constitutional validity of a statute normally "neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants."
 
 United States v. Nat'l Treasury Emps. Union,
 

 513 U.S. 454
 
 , 478,
 
 115 S.Ct. 1003
 
 ,
 
 130 L.Ed.2d 964
 
 , 986 (1995). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."
 
 United States v. Salerno,
 

 481 U.S. 739
 
 , 745,
 
 107 S.Ct. 2095
 
 , 2100,
 
 95 L.Ed.2d 697
 
 , 707 (1987). Because both the statutory text and the inherently judicial nature of the tasks required of the trial court under N.C. Gen.Stat. § 14-27.4A(c) do not allow for submission of aggravation or "egregious aggravation" factors to the jury to be found beyond a reasonable doubt, and because such submission is a federal constitutional requirement, no set of circumstances exist under which N.C. Gen.Stat. § 14-27.4A(c) is valid.
 

 Id.
 

 As written, N.C. Gen.Stat. § 14-27.4A(c) impermissibly provides the trial court with unfettered discretion to lengthen a defendant's sentence, up to and including a sentence of life in prison without parole. The judge's ability to sentence a defendant above the 392 month maximum set out in N.C. Gen.Stat. §§ 15A-1340.17(f) does not "derive[ ] wholly from the jury's verdict," but rather derives wholly from a solely judicial determination of whether "egregious aggravation" exists. This determination is made without prior notice to a defendant, and without submission to and a finding by a jury of proof beyond a reasonable doubt.
 
 Blakely,
 

 542 U.S. at 305-06
 
 ,
 
 124 S.Ct. at 2538
 
 ,
 
 159 L.Ed.2d at 415
 
 .
 

 The procedures prescribed by N.C. Gen.Stat. § 14-27.4A(c) do not comport with the minimum constitutional requirements set forth in
 
 Apprendi, Blakely, Cunningham,
 
 and the Sixth Amendment to the Constitution of the United States, as made applicable to the States through the Due Process Clause of the Fourteenth Amendment.
 
 Parker,
 

 385 U.S. at 364
 
 ,
 
 87 S.Ct. at 470
 
 ,
 
 17 L.Ed.2d at 422
 
 .
 

 5. Harmless Error Review
 

 Following the Supreme Court of the United States' decision in
 
 Blakely,
 
 our Supreme Court treated sentencing errors under
 
 Blakely
 
 as structural errors and reversible
 
 per se. See
 

 State v. Allen,
 

 359 N.C. 425
 
 , 444,
 
 615 S.E.2d 256
 
 , 269 (2005),
 
 withdrawn,
 

 *388
 

 360 N.C. 569
 
 ,
 
 635 S.E.2d 899
 
 (2006). However, the Supreme Court of the United States subsequently decided
 
 Washington v. Recuenco,
 

 *726
 

 548 U.S. 212
 
 ,
 
 126 S.Ct. 2546
 
 ,
 
 165 L.Ed.2d 466
 
 (2006), which held that "[f]ailure to submit a sentencing factor to the jury ... is not structural error."
 

 Id.
 

 at 222
 
 ,
 
 126 S.Ct. at 2553
 
 ,
 
 165 L.Ed.2d at 477
 
 .
 

 In response to the decision in
 
 Recuenco,
 
 our Supreme Court held in
 
 State v. Blackwell,
 

 361 N.C. 41
 
 ,
 
 638 S.E.2d 452
 
 (2006), consistent with
 
 Recuenco,
 
 that failure to submit a sentencing factor to the jury is subject to harmless error review.
 
 Id.
 
 at 42,
 
 638 S.E.2d at 453
 
 . In conducting harmless error review, "we must determine from the record whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt."
 
 Id.
 
 at 50,
 
 638 S.E.2d at 458
 
 (quoting
 
 Neder v. United States,
 

 527 U.S. 1
 
 , 9,
 
 119 S.Ct. 1827
 
 , 1834,
 
 144 L.Ed.2d 35
 
 , 47 (1999) ). A defendant "may not avoid a conclusion that evidence of an aggravating factor is 'uncontroverted' by merely raising an objection at trial ... Instead, the defendant must 'bring forth facts contesting the omitted element,' and must have 'raised evidence sufficient to support a contrary finding.' "
 

 Id.
 

 (quoting
 
 Neder,
 

 527 U.S. at 19
 
 ,
 
 119 S.Ct. at 1838
 
 ,
 
 144 L.Ed.2d at
 
 53 ).
 

 As discussed, Defendant was afforded no prior notice of the State's intent to seek any aggravation factors, much less "egregious aggravation" factors, as required under the normal sentencing procedures set forth in the Structured Sentencing Act. N.C. Gen.Stat. §§ 15A-1340.16(a), (a1), (a6). Rather, consistent with N.C. Gen.Stat. § 14-27.4A(c), the trial court simply found the aggravating factors at sentencing.
 

 Defendant had no prior notice or opportunity to "bring forth facts" to contest the facts found by the trial court to support its sentence under subsection (c).
 
 Blackwell,
 

 361 N.C. at 50
 
 ,
 
 638 S.E.2d at 458
 
 (citation omitted). Presuming those omissions alone were harmless, we must consider whether the evidence supporting the "egregious aggravation" factors found by the trial court were "so 'overwhelming' and 'uncontroverted' that any rational jury, as fact-finder, would have found the disputed aggravating factors beyond a reasonable doubt."
 

 Id.
 

 (citation omitted).
 

 N.C. Gen.Stat. § 14-27.4A(c) requires the trial court to determine whether aggravating factors exist, and also requires the trial court to determine whether the aggravating factors are "egregious aggravation" factors: that they are "of such brutality, duration, severity, degree, or scope
 
 beyond that normally committed in such crimes, or considered in basic aggravation of these crimes
 
 [.]"
 

 *389
 
 N.C. Gen.Stat. § 14-27.4A(c) (emphasis supplied). We do not minimize the severe harm and probable long-term impacts of Defendant's multiple criminal acts upon J.K. These acts speak for themselves and the jury found Defendant guilty of committing these crimes.
 

 On the record and evidence before us, though, we cannot say the evidence supporting the egregious aggravation factors was "so 'overwhelming' and 'uncontroverted' " such that any rational jury unanimously would have not only found the aggravating factors to exist, but would have also found the circumstances were "of such brutality, duration, severity, degree, or scope beyond that normally committed in such crimes."
 

 Id.
 

 The inherently judicial nature of the tasks the statute requires the court to undertake in sentencing a defendant pursuant to N.C. Gen.Stat. § 14-27.4A(c) renders any harmless error analysis particularly inapposite.
 

 The State has also failed to show, and we cannot find, the circumstances presented in this case went so far outside the statutorily required "heartland of cases" such that any reasonable trier of fact would have, or could have, found them to be present beyond a reasonable doubt. As noted
 
 supra,
 
 such an exercise-identifying and scrutinizing past "sexual offense of a child; adult offender" cases, determining what "normally" occurs in those cases, comparing what "normally" occurs to what actually occurred in the present case, and deciding whether the circumstances of the present case fall within or outside of the "heartland of cases"-is an inherently judicial function.
 

 The statute does not require, and Defendant did not receive, any prior notice of the "egregious aggravation" factors ultimately
 
 *727
 
 found by the judge at Defendant's sentencing hearing. The statute also did not require the State to prove "egregious aggravation" factors beyond a reasonable doubt to the jury. Due to these deficiencies in Defendant's sentence, we hold the
 
 Apprendi
 
 and
 
 Blakely
 
 errors created by the trial court's adherence to N.C. Gen.Stat. § 14-27.4A(c) were not harmless.
 

 VI. Conclusion
 

 The trial court erred in not allowing Defendant to further inquire into the amount of Spence's compensation during cross-examination. However, due to the testimony regarding the source of Spence's compensation that was heard by the jury, the disclosure of payments from the victim's compensation fund into Defendant's criminal file pursuant to N.C. Gen.Stat. § 15B-15, and other overwhelming evidence of Defendant's guilt, Defendant has failed to show "a reasonable possibility that, had the
 
 *390
 
 error in question not been committed, a different result would have been reached."
 
 Lanier,
 

 165 N.C.App. at 354
 
 ,
 
 598 S.E.2d at 607
 
 .
 

 The trial court did not err in declining to give the requested pattern jury instruction on testimony of an interested witness. The trial court provided the requested instruction on interest or bias "in substance" through the use of an alternate instruction. Defendant has failed to show "the jury was misled" by the instruction given, "or that the verdict was affected by an omitted instruction."
 
 Peoples,
 

 167 N.C.App. at 69
 
 ,
 
 604 S.E.2d at 326
 
 .
 

 Defendant's counsel presented the trial court with the controlling case law prior to sentencing. On the court's third attempt, Defendant was sentenced to between 56 and 344 months of additional incarceration beyond the consecutive 784-month sentence the law allowed for the two Class B1 felonies for which he was found guilty, on the basis of "egregious aggravation" factors found solely by a judge.
 

 "The Framers would not have thought it too much to demand that, before depriving a man of [56 to 344 more months] of his liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbours,' rather than a lone employee of the State."
 
 Blakely,
 

 542 U.S. at 313-14
 
 ,
 
 124 S.Ct. at 2543
 
 ,
 
 159 L.Ed.2d at 420
 
 (citation omitted).
 

 N.C. Gen.Stat. § 14-27.4A(c), now codified at N.C. Gen.Stat. § 14-27.28(c), provides no prior notice to Defendant that "egregious aggravation" factors will be used to enhance his presumptive sentence, does not require the requisite levels of proof or a finding of "egregious aggravation" beyond a reasonable doubt, and does not provide any mechanism for submission of "egregious aggravation" factors to a jury. The statute explicitly and exclusively vests "the court" with both the ability and the duty to find "egregious aggravation" and to sentence a defendant to any term of imprisonment longer than 300 months, up to and including life in prison without the possibility of parole.
 

 As Defendant has not challenged N.C. Gen.Stat. § 14-27.4A(b), we express no opinion on its constitutional validity. That subsection purports to allow the court to impose a minimum sentence of 300 months imprisonment, clearly within the aggravated range for minimum sentence under the generally applicable Structured Sentencing Act, without any of the notice or other protections normally provided thereunder.
 

 As written, N.C. Gen.Stat. § 14-27.4A(c) violates a defendant's rights under the Sixth Amendment, as interpreted by the Supreme Court of
 
 *391
 
 the United States in
 
 Apprendi, Blakely,
 
 and
 
 Cunningham.
 
 These cases unmistakably hold that aggravating factors, other than a defendant's prior record level or his admission, which "increase[ ] the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
 
 Cunningham,
 

 549 U.S. at 288-89
 
 ,
 
 127 S.Ct. at 868
 
 ,
 
 166 L.Ed.2d at
 
 873 ;
 
 Blakely,
 

 542 U.S. at 303
 
 ,
 
 124 S.Ct. at 2537
 
 ,
 
 159 L.Ed.2d at
 
 413 ;
 
 Apprendi,
 

 530 U.S. at 490
 
 ,
 
 120 S.Ct. at 2362-63
 
 ,
 
 147 L.Ed.2d at 455
 
 .
 

 We hold that Defendant has failed to demonstrate prejudicial error in his trial. As for sentencing, the trial court followed the sentencing procedures prescribed by N.C. Gen.Stat. § 14-27.4A(c), now codified at
 
 *728
 
 N.C. Gen.Stat. § 14-27.28(c), in sentencing Defendant. However, those procedures are in clear violation of
 
 Apprendi, Blakely,
 
 and
 
 Cunningham.
 
 The constitutional violations did not, beyond all reasonable doubt, result in harmless error to Defendant. The trial court's sentence and judgment are vacated, and this case is remanded for a new sentencing hearing.
 

 NO PREJUDICIAL ERROR AT TRIAL; JUDGMENT VACATED; REMANDED FOR NEW SENTENCING HEARING.
 

 Chief Judge McGEE and Judge INMAN concur.