ARROWOOD, Judge.
 

 *460
 
 Douglas Nelson Edwards ("defendant") appeals from judgments entered on his convictions for attempted first degree murder, statutory sex offense with a child by an adult, assault with deadly weapon inflicting serious injury ("AWDWISI"), first degree kidnapping, and taking indecent liberties with a child. For the following reasons, we find no prejudicial error.
 

 I.
 
 Background
 

 On 14 November 2016, a New Hanover County Grand Jury indicted defendant on one count of attempted first degree murder, one count of statutory sex offense with a child by an adult, one count of statutory rape of a child by an adult, one count of AWDWISI, one count of first degree kidnapping, and two counts of indecent liberties with a child. Additionally, on 20 February 2017, a New Hanover County Grand Jury indicted defendant on one count of intimidating a witness and one count of felony obstruction of justice.
 

 Defendant's case was tried in New Hanover County Superior Court before the Honorable Phyllis M. Gorham beginning on 11 September 2017. The evidence at trial tended to show that shortly before 5:00 p.m. on 14 September 2016, defendant abducted a six-year-old girl (the "juvenile") from in front of her home in the Royal Palms Mobile Home Park. Defendant drove with the juvenile on his moped to a wooded area, assaulted the juvenile, and bound the juvenile to a tree with a chain around her neck. Based on witnesses who either saw the defendant in the mobile home park, saw the abduction, or recognized defendant when they saw him driving on the moped with the juvenile, law enforcement was quickly able to identify defendant as a suspect.
 

 Within a short time from the abduction, law enforcement stopped defendant twice. During the second stop, defendant agreed to go to the sheriff's office to be interviewed. During the interview on 14 September 2016, defendant denied knowing anything about the abduction. When law enforcement became convinced defendant was not going to confess, law enforcement took defendant to his aunt's house and released him under surveillance with the hope that defendant would return to the location where he left the juvenile.
 

 Law enforcement continued to search for the juvenile through the night. Based on witnesses' recollections, cell phone tracking, and gps
 
 *461
 
 and video from a school bus that passed defendant while he was pulled to the side of the road, law enforcement was able to use canines to locate and rescue the juvenile the following morning.
 

 After the juvenile was rescued, defendant, who was still being surveilled by law enforcement, was arrested. Defendant was unaware the juvenile had been rescued at the time. During defendant's post-arrest interrogation on 15 September 2016, defendant admitted to the abduction and took law enforcement to the location where he left the juvenile and from where the juvenile was rescued. Defendant learned the juvenile had been rescued after he could not find the juvenile where he left her.
 

 Acknowledging there was insufficient evidence of statutory rape, the State voluntarily dismissed the rape charge at the close of the State's evidence. The State also conceded there was no evidence of intent with deceit
 
 *865
 
 for felony obstruction of justice and requested that the jury be instructed on misdemeanor obstruction of justice.
 

 On 20 September 2017, the jury returned verdicts finding defendant guilty of attempted first degree murder, statutory sex offense with a child by an adult, AWDWISI, first degree kidnapping, and two counts of indecent liberties with a child. The jury returned verdicts finding defendant not guilty of intimidating a witness and obstruction of justice. The trial court entered judgment on the not guilty verdicts on 20 September 2017.
 

 Pursuant to a notice of aggravating factors filed by the State on 22 June 2017, the State argued to the jury on 21 September 2017 that the offenses were "especially heinous, atrocious, or cruel" and that "[t]he victim was very young." The jury determined both aggravating factors applied to each offense. The trial court determined an aggravated sentence was justified for each offense based on the jury's determination that each offense was "especially heinous, atrocious or cruel." The trial court arrested judgment on one of the indecent liberties with a child convictions and entered separate judgments for each of the other convictions sentencing defendant as a prior record level IV to consecutive terms, each at the top of the aggravated range for each offense, totaling 970 to 1,320 months of imprisonment. The trial court also ordered defendant to register as a sex offender for life following his release. The trial court postponed its determination on satellite-based monitoring. Defendant gave notice of appeal in open court following sentencing. Appellate entries were received on 25 September 2017.
 

 Defendant subsequently filed a Motion for Appropriate Relief ("MAR") on 29 September 2017 challenging the aggravated sentences. By
 
 *462
 
 order filed 13 November 2017, the trial court denied defendant's MAR. Appellate entries related to the MAR were received on 28 November 2017.
 

 II.
 
 Discussion
 

 On appeal, defendant challenges the trial court's decision to disallow cross-examination of the State's witnesses regarding his post-arrest interrogation and the trial court's denial of his MAR.
 

 1.
 
 Cross-Examination
 

 Defendant first argues his constitutional rights to due process, a fair trial, and the right to silence were violated when the trial court limited his opening statement and prevented him from cross-examining the State's witnesses concerning his admission and his attempt to help investigators rescue the juvenile during his post-arrest interrogation. Defendant asserts that
 

 [b]ecause [he] was charged with attempted first degree murder and assault with a deadly weapon with intent to kill, both of which required the State to prove that [he] intended the child would die, it was critical to the defense to be able to show the jurors that [he] did tell the officers where she was located and actually led them to the site.
 

 Defendant claims he was forced to testify because of the trial court's erroneous evidentiary rulings. As a result of the alleged errors and constitutional violations, defendant contends he is entitled to a new trial on the attempted first degree murder and assault with a deadly weapon with intent to kill charges. We disagree.
 

 At the outset, we note that defendant was not charged with assault with a deadly weapon with intent to kill, as defendant asserts. Defendant was charged with and convicted of assault with a deadly weapon inflicting serious injury; therefore, intent to kill was not at issue for the assault offense.
 
 [1]
 

 Moreover, a review of the record shows the trial court did not grant a motion by the State to limit defendant's opening statement and did not order defendant not to mention his post-arrest interrogation in his
 
 *463
 
 opening statement, as defendant avers. In
 
 *866
 
 fact, the State never made such a motion. Prior to the opening statements, the State indicated that it would not be introducing all of defendant's statements to law enforcement and argued it was not required to do so under Rule 106 because the pre-and post-arrest interviews were discrete. The State explained that it was raising the issue prior to opening statements because it did not want the defense to mention evidence that may not be introduced during the presentation of the State's case. Specifically, the State asserted that "while [the defense] certainly can make whatever opening they want to do, they do that at their peril of either not being able to back up what they say or having to put on a case that they might not otherwise have wanted to." After additional clarification of the State's position-that the State's presentation of evidence from the interview of defendant on 14 September 2016 did not open the door to cross-examination by the defense regarding the post-arrest interrogation of defendant on 15 September 2016-the State further explained that, preemptively,
 

 [it] just wanted to give [the defense] the warning that [it] believe[s], ... that if [the defense] makes any opening statement to promises [the jury will] hear [evidence regarding defendant's post arrest interrogation], that's going to be requiring [the defense] to put on a case which they're not constitutionally required at this point to do. And I didn't want that trial strategy to be something that the defendant said he was forced into doing because of some utterance by his attorney during opening, which is, of course, not evidence.
 

 .... [The State didn't] want [defendant] to claim that this is a trial strategy that he did not endorse and agree with ... and he is now forced to go down that road because he's been placed there by his attorneys.
 

 Although the defense disagreed with the State's position that the post-arrest interrogation was a discrete interview, the defense acknowledged that it understood the State's argument that "unless [the defense is] prepared to put on some evidence, [it] [could not] say to the jury in [its] opening the [defendant] later took them to that scene." The trial court simply replied, "[y]ou would be doing that at your own risk."
 

 Because the trial court did not actually limit the defense's opening statement, the issues to be addressed are whether the trial court erred by disallowing the defense's cross-examination of the State's witnesses and whether defendant was prejudiced thereby.
 

 *464
 
 In this case, the State elicited testimony from law enforcement officer's about defendant's statements during road-side stops and an interview on 14 September 2016. The State, however, did not elicit any testimony regarding the post-arrest interrogation of defendant on 15 September 2016 and sought to prevent defendant from introducing any evidence from its witnesses regarding the post-arrest interrogation during cross-examination. The trial court sided with the State and disallowed the defense from questioning the State's witnesses concerning defendant's post-arrest interrogation. However, in order to fully address the issue, it is necessary to understand how the issue was repeatedly raised during defendant's trial.
 

 The State called attention to the issue just prior to calling Detective Lisa Hudson to testify. The State informed the court that it "intend[ed] to introduce through Detective Hudson a recorded video and audio interview that was conducted by Detective Hudson of this defendant on the night of September 14, 2016." At that time, the State asserted the same argument that it did prior to opening arguments, that the questioning of defendant on 14 September 2016 was separate from the post-arrest interrogation of defendant on 15 September 2016. The State further argued that case law stood for the proposition that defendant is not entitled to elicit testimony from the State's witnesses as to self-serving declarations made by defendant during an interview on a later date about which the State had not questioned the witnesses. The State maintained that, "as long as we don't mention the fact that he was interviewed by New Hanover County sheriff's detectives after his arrest on September 15th, [the defense] cannot-they cannot ask any of our witnesses on cross-examination about that even if we talk about the prior night's interview." After further discussion and disagreement,
 
 *867
 
 the parties agreed the State should proceed with its direct examination of Detective Hudson and that the issue would be revisited at a later time when the jury was not waiting.
 

 Before the jury returned to the court room the following morning, the defense made an offer of proof. On
 
 voir dire
 
 , Detective Hudson testified that during the post-arrest interrogation of defendant on 15 September 2016,
 

 [defendant] admitted to what he done and he took us to the location where he took [the juvenile] and tied her to the tree and explained everything, told us on the way there everything that we needed to know as far as getting the locks off and what we needed. He gave us some specific directions exactly to where she was ....
 

 *465
 
 Detective Hudson testified that defendant stated he hoped the juvenile was okay and that he was sorry. Upon conclusion of the
 
 voir dire
 
 testimony of Detective Hudson, the defense argued the State's Rule 106 argument was a red herring because this was not a Rule 106 issue. The defense asserted that "[w]hat the State is trying to do is circumvent [defendant's] right to cross-examine this witness" and "[defendant] has a right to ask [Detective Hudson] questions about what happened after he was arrested." The defense explicitly stated it "[was] not trying to admit statements or recording."
 

 Upon hearing the arguments, the trial court ruled the defense could not cross-examine Detective Hudson regarding the post-arrest interrogation of defendant on 15 September 2016. The trial court explained, "I find that the [15 September 2016] interview was a separate interview from the [14 September 2016] interview; and, therefore, I will not allow the defense to ask this witness any questions ... about the [15 September 2016] interview." The trial court noted the defense's objection, and when the defense questioned Detective Hudson how many times she interviewed defendant, the State's objection was sustained.
 

 The State later called Detective Michael Sorg, who led the surveillance of defendant on the morning of 15 September 2016 until defendant's arrest, as a witness. Upon completion of the State's direct examination, the defense put on an offer of proof. Detective Sorg testified on
 
 voir dire
 
 that, on 15 September 2016, defendant took law enforcement to the location where he left the juvenile. Detective Sorg also testified that defendant stated he was planning to go back to the location to bring the juvenile water. After the
 
 voir dire
 
 testimony, the defense renewed its arguments that the defense should be able to cross-examine the witness regarding the post-arrest interrogation of defendant. In response, the State argued that defendant would be required to take the stand if he wanted the evidence admitted. The State argued the evidence was inadmissible because it was self-serving hearsay and because the post-arrest interrogation on 15 September 2016 was separate from the interview of defendant on 14 September 2016. The trial court again ruled the defense could not cross-examine the State's witness concerning the post-arrest interrogation.
 

 Prior to the defense's cross-examination of Detective Sorg on the third morning of evidence, the defense again requested to question Detective Sorg about defendant taking law enforcement to the location where the juvenile was found. The defense argued that disallowing the evidence would mislead and deceive the jury. The trial court denied the defense's request and explained that, "[m]y understanding based
 
 *466
 
 upon everything that I heard about that last interview on [15 September 2016], that there's not been any testimony about that last interview by Detective Sorg; therefore, you will not question him about anything that has to do with that interview."
 

 Upon the conclusion of the State's evidence, the issue of the defense presenting evidence regarding the 15 September 2016 post-arrest interrogation of defendant arose again. The State argued the defense could not get around the trial court's prior rulings by calling Detective Sorg as a defense witness. The defense responded that it understood the trial court's prior rulings to exclude testimony of defendant's hearsay statements on cross-examination and explained that it was not seeking to introduce hearsay statements.
 

 *868
 
 Nevertheless, the trial court ruled that the defense could not question Detective Sorg on anything related to the post-arrest interrogation of defendant on 15 September 2016. The State reiterated that the testimony was a self-serving statement by defendant, was in a completely different interview, and is hearsay. The State also reasserted its position that "[i]f they want to present evidence about what the defendant said and did during those interviews, [defendant] is going to have to take the stand and testify himself." The trial court agreed and disallowed the defense from questioning Detective Sorg about anything related to the post-arrest interrogation on 15 September 2016. The defense made another offer of proof from Detective Sorg to preserve the issue.
 

 Defendant then took the stand to testify in his own defense. Defendant testified about his post-arrest interrogation on 15 September 2016.
 

 In arguing the trial court erred in disallowing cross-examination of the State's witnesses concerning defendant's post-arrest interrogation on 15 September 2016, defendant first contends the cross-examination should have been allowed under Rule 106 of the North Carolina Rules of Evidence in order to prevent the jury from being misled or deceived by the evidence presented of the 14 September 2016 interview. Defendant's argument is misplaced.
 

 Rule 106 provides that, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." N.C. Gen. Stat. § 8C-1, Rule 106 (2017). This Court has explained that
 

 Rule 106 codifies the standard common law rule that when a writing or recorded statement or a part thereof
 
 *467
 
 is introduced by any party, an adverse party can obtain admission of the entire statement or anything so closely related that in fairness it too should be admitted. The trial court decides what is closely related. The standard of review is whether the trial court abused its discretion. The purpose of the "completeness" rule codified in Rule 106 is merely to ensure that a misleading impression created by taking matters out of context is corrected on the spot, because of the inadequacy of repair work when delayed to a point later in the trial.
 

 State v. Thompson
 
 ,
 
 332 N.C. 204
 
 , 219-220,
 
 420 S.E.2d 395
 
 , 403-404 (1992) (internal quotation marks and citations omitted).
 

 Below, the State argued, and the trial court determined, the post-arrest interrogation was discrete from the 14 September 2016 interview, from which the State introduced transcripts and recordings. Therefore, the trial court determined Rule 106 did not require the admission of evidence regarding the post-arrest interrogation of defendant.
 

 Defendant argues the trial court erred in this determination because a break in time between the interview on 14 September 2016 and the post-arrest interrogation on 15 September 2016 is not determinative. Citing
 
 Thompson
 
 ,
 
 332 N.C. at 220
 
 ,
 
 420 S.E.2d at 404
 
 , defendant contends the trial court should have determined whether the post-arrest interrogation was explanatory or relevant and whether there was a nexus between the prior interviews and the post-arrest interrogation. In
 
 Thompson
 
 , however, the Court held there was no nexus between a prior exculpatory interview that the defendant sought to admit under Rule 106 at the time the State introduced tapes and transcripts of inculpatory telephone conversations between defendant and an informant.
 
 Id
 
 . at 220-21,
 
 420 S.E.2d at 404
 
 . Thus, the trial court did not abuse its discretion in denying the defendant's attempt to introduce a transcript of the prior exculpatory interview.
 
 Id
 
 . at 221,
 
 420 S.E.2d at 404
 
 . The
 
 Thompson
 
 Court noted, "[i]t was defendant's responsibility, not the State's, to introduce evidence about his exculpatory interview."
 
 Id
 
 . at 220-21,
 
 420 S.E.2d at 404
 
 .
 

 Similarly, in
 
 State v. Broyhill
 
 , --- N.C. App. ----,
 
 803 S.E.2d 832
 
 (2017),
 
 disc. review denied
 
 ,
 
 370 N.C. 694
 
 ,
 
 811 S.E.2d 588
 
 (2018), which defendant also relies on, this Court held the trial court did not err in excluding transcripts of two custodial interviews that the defendant sought to have admitted contemporaneously
 
 *869
 
 with a tape and a transcript of a subsequent custodial interview. This Court explained in
 
 Broyhill
 
 as follows:
 

 *468
 
 the trial court correctly applied Rule 106 in its decision to exclude the first two statements at trial. After reviewing all three recorded statements and comparing the contents thereof, the court concluded that defendant made no statement during the first or second interview that under Rule 106 ought, in fairness, to be considered contemporaneously with the statements of April 26. The court found no instance where the statements in the April 26 interview require further explanation by any excerpts from the April 23 or the April 25 interview, and no instance where the statements in the [April 26] interview were rendered out of context or misleading in the absence of excerpts from the April 23 or April 25 interview. Defendant harps on the temporal connection and interrelated nature of the statements but fails to explain precisely how the first two statements would enhance the jury's understanding of the third. And upon our review of the interview transcripts, we conclude defendant has failed to show that the court abused its discretion in excluding defendant's first two statements at trial.
 

 Id
 
 . at ----,
 
 803 S.E.2d at 844
 
 (internal quotation marks omitted).
 

 As in
 
 Thompson
 
 and
 
 Broyhill
 
 , there is no nexus between the 14 September 2016 interview of defendant and the 15 September 2016 post-arrest interrogation of defendant that would require evidence of the post-arrest interrogation to explain or add context to the 14 September 2016 interview. Thus, the trial court did not err in determining the 14 September 2016 interview and the 15 September 2016 post-arrest interrogation were discrete. That determination, however, is of no consequence in this case.
 

 By its terms, Rule 106 only applies to the introduction of a "writing or recorded statement" by defendant "which ought in fairness to be considered contemporaneously" with a writing or recorded statement introduced by the State. N.C. Gen. Stat. § 8C-1, Rule 106. The commentary to Rule 106 explains that, "[f]or practical reasons, the rule is limited to writings and recorded statements and does not apply to conversations."
 
 See
 
 Advisory Committee Notes to Rule 106. The commentary also notes that "[t]he rule does not in any way circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case."
 
 Id
 
 .
 

 In both
 
 Thompson
 
 and
 
 Broyhill
 
 , the defendants sought to introduce transcripts of interviews under Rule 106 at the same time that the State
 
 *469
 
 introduced transcripts and recordings of phone calls,
 
 see
 

 Thompson
 
 ,
 
 332 N.C. at 219
 
 ,
 
 420 S.E.2d at 403
 
 , and another interview,
 
 see
 

 Broyhill
 
 , --- N.C. App. at ----,
 
 803 S.E.2d at 838
 
 . In contrast to those cases, the defense does not argue that it attempted to introduce a transcript or recording of the post-arrest interrogation at the time the State introduced recordings of the 14 September 2016 interview. The defense explained and put on offers of proof showing that it simply wanted to question the State's witnesses about the post-arrest interrogation of defendant during cross-examination.
 

 Rule 106 neither provides for the admission or exclusion of such testimony during the defense's cross-examination of the State's witnesses in this case.
 

 It is Rule 611 of the North Carolina Rules of Evidence that addresses the scope of cross-examination. The pertinent portion of Rule 611 provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2017). Our appellate courts have referred to this rule as " 'the "wide-open" rule of cross-examination, so called because the scope of inquiry is not confined to those matters testified to on direct examination.' "
 
 State v. Singletary
 
 ,
 
 247 N.C. App. 368
 
 , 374,
 
 786 S.E.2d 712
 
 , 717 (2016) (quoting
 
 State v. Penley
 
 ,
 
 277 N.C. 704
 
 , 708,
 
 178 S.E.2d 490
 
 , 492 (1971) ). "But, the defendant's right to cross-examination is not absolute."
 
 State v. Guthrie
 
 ,
 
 110 N.C. App. 91
 
 , 93,
 
 428 S.E.2d 853
 
 , 854,
 
 disc. review denied
 
 ,
 
 333 N.C. 793
 
 ,
 
 431 S.E.2d 28
 
 (1993). "[A]lthough cross-examination is a matter of right, the scope of cross-examination is subject to appropriate control in the sound discretion of the court."
 

 *870
 

 State v. Coffey
 
 ,
 
 326 N.C. 268
 
 , 290,
 
 389 S.E.2d 48
 
 , 61 (1990) ;
 
 see also
 
 N.C. Gen. Stat. § 8C-1, Rule 611. "Absent a showing of an abuse of discretion or that prejudicial error has resulted, the trial court's ruling will not be disturbed on review."
 
 State v. Maynard
 
 ,
 
 311 N.C. 1
 
 , 10,
 
 316 S.E.2d 197
 
 , 202-203,
 
 cert. denied
 
 ,
 
 469 U.S. 963
 
 ,
 
 105 S.Ct. 363
 
 ,
 
 83 L.Ed.2d 299
 
 (1984),
 
 dismissal of habeas corpus aff'd
 
 ,
 
 943 F.2d 407
 
 (1991),
 
 cert. denied
 
 ,
 
 502 U.S. 1110
 
 ,
 
 112 S.Ct. 1211
 
 ,
 
 117 L.Ed.2d 450
 
 (1992).
 

 Although defendant does not specifically cite Rule 611, defendant does make the argument that testimony regarding his post-arrest interrogation that the defense sought to elicit from the State's witnesses during cross-examination was relevant. We agree. "Relevant evidence" is broadly defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2017). In this case, there is no question
 
 *470
 
 that the defendant's post-arrest interrogation, during which defendant admitted to the abduction of the juvenile and took law enforcement to the location where he left the juvenile chained to a tree, was relevant. The issue this Court must decide is whether the trial court's exclusion of the relevant evidence was an abuse of discretion.
 

 As shown above in the summary of the defense's attempts to cross-examine the State's witnesses regarding the 15 September 2016 post-arrest interrogation and the State's counter arguments to exclude the testimony, the State argued the cross-examination was improper for a number of reasons, including that the post-arrest interrogation was separate from the interview of defendant on 14 September 2016 for purposes of Rule 106, the testimony the defense sought to elicit included self-serving declarations by defendant, the State had not elicited any evidence about the post-arrest interrogation, and the testimony was hearsay. In denying defendant the opportunity to elicit testimony concerning the post-arrest interrogation from the State's witnesses, the trial court accepted the reasons argued by the State. The court explained at different times that "the [15 September 2016] interview was a separate interview from the [14 September 2016] interview; and, therefore, I will not allow the defense to ask this witness any questions ... about the [15 September 2016] interview[,]" and "[m]y understanding based upon everything that I heard about that last interview on [15 September 2016], that there's not been any testimony about that last interview by [the witness]; therefore, you will not question [the witness] about anything that has to do with that interview."
 

 When the trial court's reasons for disallowing the defense from cross-examining the State's witnesses regarding the 15 September 2016 post-arrest interrogation is considered in light of the law on Rule 106 and Rule 611, it is clear that the trial court abused its discretion in disallowing the evidence. As determined above, Rule 106 is inapplicable in this case and Rule 611 does not limit cross-examination to those matters raised during direct examination.
 

 Generally, "[e]videntiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial."
 
 State v. Ferguson
 
 ,
 
 145 N.C. App. 302
 
 , 307,
 
 549 S.E.2d 889
 
 , 893,
 
 disc. review denied
 
 ,
 
 354 N.C. 223
 
 ,
 
 554 S.E.2d 650
 
 (2001) ;
 
 see also
 
 N.C. Gen. Stat. § 15A-1443(a) (2017). Defendant, however, argues the error in this case amounted to a violation of his constitutional rights and, therefore, the State must prove the error was harmless beyond a reasonable doubt.
 
 See
 
 N.C. Gen. Stat. § 15A-1443(b) (2017) ("A violation of the defendant's rights under the Constitution of the United States is
 
 *471
 
 prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.").
 

 We hold the trial court's error in this case was harmless under either prejudice standard given the overwhelming evidence of defendant's guilt,
 
 see
 

 State v. Harris
 
 ,
 
 136 N.C. App. 611
 
 , 617,
 
 525 S.E.2d 208
 
 , 212 (" 'Overwhelming evidence of guilt will render even a constitutional error harmless.' ") (quoting
 
 State v. Welch
 
 ,
 
 316 N.C. 578
 
 , 583,
 
 342 S.E.2d 789
 
 , 792 (1986) ),
 
 appeal dismissed
 

 *871
 

 and disc review denied
 
 ,
 
 351 N.C. 644
 
 ,
 
 543 S.E.2d 877
 
 (2000), and the fact that the evidence the defense sought to admit on cross-examination was ultimately admitted into evidence, albeit through defendant's own testimony,
 
 see
 

 State v. Durham
 
 ,
 
 74 N.C. App. 159
 
 , 164,
 
 327 S.E.2d 920
 
 , 924 (1985) ("The rule in North Carolina is that where a trial court erroneously refuses to allow cross-examination of a witness, and then the evidence sought to be admitted by cross-examination is admitted later by another witness, the error is harmless."). Because the jury had the opportunity to consider the overwhelming evidence against defendant, including testimony by those who either witnessed the abduction or saw defendant with the juvenile, testimony by the victim about the abduction and the assault, testimony by law enforcement about the investigation and the rescue of the juvenile from being left chained by the neck to a tree overnight, testimony from medical personnel who examined the juvenile, and testimony by defendant about his post-arrest interrogation on 15 September 2016, and because the jury unanimously found defendant guilty of attempted first degree murder, we hold the defendant was not prejudiced by the trial court's erroneous rulings limiting cross-examination.
 

 2.
 
 MAR
 

 On appeal, defendant also argues that the trial court erred in denying his motion for appropriate relief. We disagree.
 

 "When considering rulings on motions for appropriate relief, we review the trial court's order to determine 'whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.' "
 
 State v. Frogge
 
 ,
 
 359 N.C. 228
 
 , 240,
 
 607 S.E.2d 627
 
 , 634 (2005) (quoting
 
 State v. Stevens
 
 ,
 
 305 N.C. 712
 
 , 720,
 
 291 S.E.2d 585
 
 , 591 (1982) ). " 'When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are
 
 *472
 
 fully reviewable on appeal.' "
 
 State v. Lutz
 
 ,
 
 177 N.C. App. 140
 
 , 142,
 
 628 S.E.2d 34
 
 , 35 (2006) (quoting
 
 State v. Wilkins
 
 ,
 
 131 N.C. App. 220
 
 , 223,
 
 506 S.E.2d 274
 
 , 276 (1998) ).
 

 In the MAR filed on 29 September 2017, defendant argued the State erred by failing to allege aggravating factors in the indictments and by failing to narrowly define the aggravating factors. In bringing the MAR, defendant sought to have the sentences for the aggravated offenses vacated and to be resentenced to non-aggravated sentences. The trial court denied defendant's MAR by order on 13 November 2017.
 

 Defendant does not challenge the trial court's findings, but instead argues the trial court erred in its application of the relevant law. First, defendant argues that the United States Supreme Court's decision in
 
 Apprendi v. New Jersey
 
 ,
 
 530 U.S. 466
 
 ,
 
 120 S.Ct. 2348
 
 ,
 
 147 L.Ed.2d 435
 
 (2000), should apply in this instance and asks this Court to hold for the first time that, "in order to be convicted of an aggravated crime, the indictment must include the element of the aggravated crime." In
 
 Apprendi
 
 , the Supreme Court held that a New Jersey "hate crime" law that allowed a trial judge to impose an extended term of imprisonment "based upon the judge's finding, by a preponderance of the evidence, that the defendant's 'purpose' ... was 'to intimidate' [the] victim on the basis of a particular characteristic the victim possessed" violated the Due Process Clause of the Fourteenth Amendment.
 
 530 U.S. at 491
 
 ,
 
 120 S.Ct. at 2363
 
 ,
 
 147 L.Ed.2d at 456
 
 . The Supreme Court explained that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" and "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed."
 
 Id
 
 . at 490,
 
 120 S.Ct. at 2363
 
 ,
 
 147 L.Ed.2d at 455
 
 (internal quotation marks and citations omitted).
 

 Relying on
 
 Apprendi
 
 , defendant argues the aggravation of an offense is "a new, separate, and greater crime" and, therefore,
 
 *872
 
 aggravating factors must be alleged in an indictment.
 

 However, our Supreme Court held in
 
 State v. Wallace
 
 ,
 
 351 N.C. 481
 
 ,
 
 528 S.E.2d 326
 
 (2000), that "the Fourteenth Amendment does not require the listing in an indictment of all the elements or facts which might increase the maximum punishment for a crime." 351 N.C. at 508,
 
 528 S.E.2d at 343
 
 . Defendant acknowledges
 
 Wallace
 
 , but seeks to have the issue reconsidered in light of
 
 Apprendi
 
 . We decline to do so as
 
 Apprendi
 
 and
 
 Wallace
 
 are not at odds.
 

 *473
 
 In North Carolina, N.C. Gen. Stat. § 15A-1340.16 governs aggravated and mitigated sentences and places the burden on the State to prove to a jury beyond a reasonable doubt that an aggravating factor exists if the defendant does not admit to the aggravating factor.
 
 See
 
 N.C. Gen. Stat. § 15A-1340.16(a) and (b) (2017). The statute also contains a list of statutory aggravating factors,
 
 see
 
 N.C. Gen. Stat. § 15A-1340.16(d), and specifically provides that "[a]ggravating factors set forth in subsection (d) ... need not be included in an indictment or other charging instrument[,]" N.C. Gen. Stat. § 15A-1340.16(a4). Instead, the statute requires that
 

 [t]he State must provide a defendant with written notice of its intent to prove the existence of one or more aggravating factors under subsection (d) of this section ... at least 30 days before trial or the entry of a guilty or no contest plea. ... The notice shall list all the aggravating factors the State seeks to establish.
 

 N.C. Gen. Stat. § 15A-1340.16(a6).
 

 It appears the State complied with the requirements of N.C. Gen. Stat. § 15A-1340.16 in this case. In accordance with N.C. Gen. Stat. § 15A-1340.16(a6), the State filed a written notice of aggravating factors on 22 June 2017, months before trial. That notice informed defendant that the State sought to prove two statutory aggravating factors, that "[t]he offense was especially heinous, atrocious, or cruel[,]"
 
 see
 
 N.C. Gen. Stat. § 15A-1340.16(d)(7), and that "[t]he victim was very young[,]"
 
 see
 
 N.C. Gen. Stat. § 15A-1340.16(d)(11). Pursuant to the procedure for a bifurcated trial set forth in N.C. Gen. Stat. § 15A-1340.16(a1), after the jury convicted defendant of the underlying offenses, the court allowed the State to proceed on the aggravating factors. Upon consideration of the evidence and arguments, the jury found that each offense was especially heinous, atrocious, or cruel and that the victim was very young.
 

 We hold the State complied with N.C. Gen. Stat. § 15A-1340.16 in all respects and that the procedure prescribed by the statute satisfies the mandate in
 
 Apprendi,
 
 that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
 
 Apprendi
 
 ,
 
 530 U.S. at 490
 
 ,
 
 120 S.Ct. at 2362-63
 
 ,
 
 147 L.Ed.2d at 455
 
 .
 

 In addition to defendant's argument that the aggravating factors should have been alleged in the indictments, defendant argues the trial court erred in denying his MAR because the North Carolina jury instruction issued by the trial court for "heinous, atrocious, or cruel" is unconstitutionally vague. Our Supreme Court, however, has previously
 
 *474
 
 rejected that argument and held the jury instruction for heinous, atrocious, or cruel provides constitutionally sufficient guidance to the jury.
 
 See
 

 State v. Syriani
 
 ,
 
 333 N.C. 350
 
 , 391-92,
 
 428 S.E.2d 118
 
 , 140-41 (1993). We are bound by our Supreme Court's decision.
 

 III.
 
 Conclusion
 

 For the reasons discussed, we hold defendant received a trial free from prejudicial error. However, remand is necessary to correct the clerical error in the judgment entered on defendant's conviction for AWDWISI.
 

 NO PREJUDICIAL ERROR; REMAND.
 

 Judge CALABRIA concurs.
 

 Judge MURPHY concurs in result only.
 

 [1]
 

 A review of the records reveals the trial court entered judgment in count 3 of file number 16 CRS 6867 for "AWDW intent to kill" in violation of
 
 N.C. Gen. Stat. § 14-32
 
 (c). This appears to be a clerical error as defendant was indicted, the jury was instructed, and defendant was convicted of AWDWISI in violation of
 
 N.C. Gen. Stat. § 14-32
 
 (b). Both felony assaults have the same punishment class and remand is appropriate to correct the clerical error.